# SUPREME COURT OF THE UNITED STATES

BRIAN TINGLEY *v.* ROBERT W. FERGUSON, ATTORNEY
GENERAL OF WASHINGTON, ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 22–942.   Decided December 11, 2023

The petition for a writ of certiorari is denied. JUSTICE
KAVANAUGH would grant the petition for a writ of certiorari.

JUSTICE THOMAS, dissenting from the denial of certiorari.

This petition asks us to consider whether Washington can
censor counselors who help minors accept their biological
sex. Because this question has divided the Courts of Appeals and strikes at the heart of the First Amendment, I
would grant review.

## I

There is a fierce public debate over how best to help minors with gender dysphoria. The petitioner, Brian Tingley,
stands on one side of the divide. He believes that a person's
sex is "a gift from God, integral to our very being." Pet. for
Cert. 7. As a licensed marriage and family counselor, Tingley seeks to assist minors who suffer from gender dysphoria but "want to become comfortable with their biological
sex." *Ibid.* Tingley does so through "talk therapy"—*i.e.*,
therapy conducted solely through speech. The State of
Washington is on the other side of the divide. Its view is
that the State should "protec[t] its minors against exposure
to serious harms caused by" counseling to change a minor's
gender identity, Note, Wash. Rev. Code §18.130.180 (2018),
and, as a result, that counselors should only affirm a minor's chosen gender identity.

Washington silenced one side of this debate by enacting
S.B. 5722, 65th Leg., Reg. Sess. (2018) (SB 5722). SB 5722

prohibits licensed healthcare providers from "[p]erforming conversion therapy on a patient under age eighteen." §18.130.180(26). According to Washington, "[c]onversion therapy" is "a regime that seeks to change an individual's sexual orientation or gender identity." §18.130.020(4)(a). Washington excludes from the definition of "[c]onversion therapy" counseling "that provide[s] acceptance, support, and understanding of clients or the facilitation of clients' coping, social support, and identity exploration and development that do[es] not seek to change sexual orientation or gender identity." §18.130.020(4)(b). In other words, helping a minor become comfortable with his biological sex is prohibited "conversion therapy," while encouraging a minor to change his "outward, physical traits" to "alig[n] . . . with [his] gender identity" is not. Dept. of Health and Human Services, Office of Population Affairs, Gender-Affirming Care and Young People 1 (Aug. 2023). Violations of SB 5722 are punishable by fines up to $5,000, "remedial education," suspension from practice, and license revocation. Wash. Rev. Code §18.130.160.

After Washington enacted SB 5722, Tingley filed suit, arguing that SB 5722 violates the First Amendment by restricting his speech based on its viewpoint and content. The Ninth Circuit, however, held that SB 5722 does not regulate speech at all. It reasoned that counseling is a type of medical treatment and qualifies as only professional conduct. 47 F. 4th 1055, 1080 (2022). In the alternative, the Ninth Circuit held that counseling is unprotected by the First Amendment because there is a "tradition of regulation governing the practice of those who provide health care within state borders." *Ibid.* The Ninth Circuit denied rehearing en banc over the statement of Judge O'Scannlain, joined by three others, and Judge Bumatay's dissent. See 57 F. 4th 1072 (2023).

The Ninth Circuit's opinion created a Circuit split. Two years earlier, the Eleventh Circuit concluded that near-

identical Florida municipal ordinances *did* regulate speech. *Otto* v. *Boca Raton*, 981 F. 3d 854, 859, 865 (2020). The Eleventh Circuit held the ordinances unconstitutional because they prohibited speech based on content and viewpoint, and could not satisfy strict scrutiny. *Id.*, at 864–870. The Third Circuit has also held that laws restricting talk therapy designed to change a client's sexual orientation regulate speech, not conduct. *King* v. *Governor of New Jersey*, 767 F. 3d 216, 224 (2014), abrogated on other grounds by *National Institute of Family and Life Advocates* v. *Becerra*, 585 U. S. 755 (2018). Tingley asks us to resolve this Circuit split and review whether SB 5722 violates the First Amendment. We should have.

## II

There is little question that SB 5722 regulates speech and therefore implicates the First Amendment. True, counseling is a form of therapy, but it is conducted solely through speech. "If speaking to clients is not speech, the world is truly upside down. [SB 5722] sanction[s] speech directly, not incidentally—the only 'conduct' at issue is speech." *Otto*, 981 F. 3d, at 866; see *King*, 767 F. 3d, at 228 (noting that "it would be strange indeed to conclude" talk therapy is conduct when "the same words, spoken with the same intent" by a student is speech).

It is a "fundamental principle that governments have 'no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *National Institute of Family and Life Advocates*, 585 U. S., at 766 (quoting *Reed* v. *Town of Gilbert*, 576 U. S. 155, 163 (2015); some internal quotation marks omitted)). A law that restricts speech based on its content or viewpoint is presumptively unconstitutional and may be upheld only if the state can prove that the law is narrowly tailored to serve compelling state interests. *Ibid.*

Under SB 5722, licensed counselors can speak with minors about gender dysphoria, but only if they convey the state-approved message of encouraging minors to explore their gender identities. Expressing any other message is forbidden—even if the counselor's clients ask for help to accept their biological sex. That is viewpoint-based and content-based discrimination in its purest form. As a result, SB 5722 is presumptively unconstitutional, and the state must show that it can survive strict scrutiny before enforcing it.

The Ninth Circuit attempted to sidestep this framework by concluding that counseling is unprotected by the First Amendment because States have traditionally regulated the practice of medicine. See 47 F. 4th, at 1080. The Court has already made clear its "reluctan[ce] to 'exemp[t] a category of speech from the normal prohibition on content-based restrictions.'" *National Institute of Family and Life Advocates*, 585 U. S., at 767 (quoting *United States* v. *Alvarez*, 567 U. S. 709, 722 (2012) (plurality opinion)). Accordingly, the Court has instructed that states may not "impose content-based restrictions on speech without 'persuasive evidence . . . of a long (if heretofore unrecognized) tradition' to that effect." 585 U. S., at 767 (quoting *Brown* v. *Entertainment Merchants Assn.*, 564 U. S. 786, 792 (2011); some internal quotation marks omitted). Despite this instruction, the Ninth Circuit did not offer a single example of a historical regulation analogous to SB 5722, which targets treatments conducted solely through speech. See 57 F. 4th, at 1082 (O'Scannlain, J., statement respecting denial of rehearing en banc) (explaining the panel's "citations are not merely insufficient evidence—they are not even relevant evidence").

This case is not the first instance of the Ninth Circuit restricting medical professionals' First Amendment rights, and without the Court's review, I doubt it will be the last. This Court recently reversed the Ninth Circuit's decision to

uphold a law compelling crisis pregnancy centers to disseminate government-drafted notices. *National Institute of Family and Life Advocates*, 585 U. S., at 765–66. The Ninth Circuit declined to apply strict scrutiny because it concluded that the law regulated only "professional speech." *Id.*, at 767. As we explained, however, "[s]peech is not unprotected merely because it is uttered by 'professionals.'" *Ibid.* And, we warned that "regulating the content of professionals' speech 'pose[s] the inherent risk that the Government seeks not to advance a legitimate regulatory goal, but to suppress unpopular ideas or information.'" *Id.,* at 771 (quoting *Turner Broadcasting System, Inc.* v. *FCC*, 512 U. S. 622, 641 (1994)). That warning has proved prescient.

\*　\*　\*

"If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *West Virginia Bd. of Ed.* v. *Barnette*, 319 U. S. 624, 642 (1943). Yet, under SB 5722, licensed counselors cannot voice anything other than the state-approved opinion on minors with gender dysphoria without facing punishment. The Ninth Circuit set a troubling precedent by condoning this regime. Although the Court declines to take this particular case, I have no doubt that the issue it presents will come before the Court again. When it does, the Court should do what it should have done here: grant certiorari to consider what the First Amendment requires.

# SUPREME COURT OF THE UNITED STATES

BRIAN TINGLEY *v.* ROBERT W. FERGUSON, ATTORNEY
GENERAL OF WASHINGTON, ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 22–942. Decided December 11, 2023

JUSTICE ALITO, dissenting from the denial of certiorari.

Like JUSTICE THOMAS, I would grant the petition for a writ of certiorari. This case presents a question of national importance. In recent years, 20 States and the District of Columbia have adopted laws prohibiting or restricting the practice of conversion therapy. It is beyond dispute that these laws restrict speech, and all restrictions on speech merit careful scrutiny.

There is a conflict in the Circuits about the constitutionality of such laws. Compare, 47 F. 4th 1055 (CA9 2022), with *Otto* v. *Boca Raton*, 981 F. 3d 854 (CA11 2020). And the Ninth Circuit's holding is based on the highly debatable view that its prior decision in *Pickup* v. *Brown*, 740 F. 3d 1208 (2014), survived at least in part our decision in *National Institute of Family and Life Advocates* v. *Becerra*, 585 U. S. \_\_\_, \_\_\_ (2018) (slip op., at \_\_\_) which singled out *Pickup* for disapproval.

For these reasons, this case easily satisfies our established criteria for granting certiorari, see this Court's Rule 10(a), and I would grant review.